## CONNECTICUT PRINTERS, INC. *v.* REDEVELOPMENT AGENCY OF THE CITY OF HARTFORD

ALCORN, COTTER, THIM, RYAN and SHAPIRO, Js.

Argued April 10—decided May 19, 1970

*Russell L. Post, Jr.,* for the appellant (plaintiff).

*Thomas P. Heslin,* for the appellee (defendant).

COTTER, J.   The defendant, in eminent domain proceedings, took the plaintiff's land, together with the buildings and improvements thereon, known as 89 Trumbull Street, as part of a redevelopment project in Hartford and assessed damages at $385,000.   The defendant filed a statement of compensation and deposited that sum of money with the clerk of the Superior Court.   Thereafter, the

plaintiff applied to the Superior Court for a review of the assessment and the court referred the matter to a state referee, who, acting as the court, heard evidence and found the property to have a fair market value of $465,000. The plaintiff has appealed to this court from the judgment rendered in its favor.

The finding sets forth the following unchallenged facts. The structure on the land in question consisted of five stories and a basement and had a small elevator. There was no parking space connected with the property on the taking date. There was a difficult driveway on a downgrade, one-way street, and a trailer truck had to come down and back up a grade to get in. The building was in excellent repair at the time of the taking, although it was constructed in 1926. It had an unusually great load-bearing capacity and had been used for printing, binding and engraving operations. Before the date of the taking, December 28, 1967, the plaintiff had purchased land in 1952 and 1962 in Bloomfield, outside of Hartford, and by December of 1965 it had ceased completely its operations in the building except for paper storage and bindery purposes. No local printery and book-binding operation would occupy as much space as was contained in the building. Operations for printing and binding under conditions existing on the taking date are most efficiently conducted in one-story buildings, such as the plaintiff's present plant, located in Bloomfield, where there are no elevators and operations are horizontal.

The plaintiff makes no claim that redevelopment caused the move of its business from Trumbull Street to the Bloomfield plant.

Although its assignment of errors was quite extensive, the plaintiff has not briefed or argued the

claims relating to the refusal to find certain alleged facts, or to the admission of certain evidence. We therefore treat these assignments of error as abandoned. *Sherman-Colonial Realty Corporation* v. *Goldsmith,* 155 Conn. 175, 183, 230 A.2d 568. The plaintiff vigorously presses the assignments of error addressed to the referee's finding that, because no printing or book concern would lease a structure of this type at this location, despite its unusual strength, the highest and best use of the subject property on the date of the taking was as a commercial building to be rented to multiple tenants for uses such as manufacturing and storage.

Article first, § 11, of the Connecticut constitution and the fifth amendment to the United States constitution, as applied through the due process clause of the fourteenth amendment, provide for the payment of just compensation to one whose property is taken for a public use. Just compensation has been defined as a fair equivalent in money for the property taken as nearly as its nature will permit. *E. & F. Construction Co.* v. *Ives,* 156 Conn. 416, 420, 242 A.2d 768; *Ives* v. *Addison,* 155 Conn. 335, 341, 232 A.2d 311. The usual measure of compensation is fair market value, or the price that would probably result from fair negotiations between a willing seller and a willing buyer. *Eljay Realty Co.* v. *Argraves,* 149 Conn. 203, 205, 206, 177 A.2d 677; 29A C.J.S., Eminent Domain, § 136(2); 27 Am. Jur. 2d, Eminent Domain, § 267. In order to fix this fair equivalent in money, or value, or fair market value, it was the referee's duty to consider all the factors, circumstances and opinions expressed by the witnesses before him that would tend to affect the worth of the property taken; to take into account the use to which the property has been devoted and

which in fact enhanced its value; and ultimately to make his own determination of just compensation. *Moss* v. *New Haven Redevelopment Agency,* 146 Conn. 421, 425, 151 A.2d 693; see *Brothers, Inc.* v. *Ansonia Redevelopment Agency,* 158 Conn. 37, 43, 255 A.2d 836. One factor was the so-called highest and best use of the property or its most advantageous use. *Housing Authority* v. *Lustig,* 139 Conn. 73, 76, 90 A.2d 169. Value will be affected by the uses which can be made of the premises, and a willing seller may reasonably be expected to sell to the prospective buyer who would use the property most advantageously and would therefore be willing to pay more than others. In a different context we stated, in *State National Bank* v. *Planning & Zoning Commission,* 156 Conn. 99, 101, 239 A.2d 528: "The 'highest and best use' concept, chiefly employed as a starting point in estimating the value of real estate by appraisers, has to do with the use which will most likely produce the highest market value, greatest financial return, or the most profit from the use of a particular piece of real estate."

It is the plaintiff's contention that, even though no ready market existed for its unusually strong structure as a printing plant, the highest and best use of the building was nevertheless a printing plant. But if no market existed, such a use would not produce the highest market value or the most profits, because the premises would be vacant. In *Milford Water Co.* v. *Kannia,* 92 Conn. 31, 34, 101 A. 475, a landowner offered evidence as to the adaptability of his premises for use in a water-bottling business on the ground that the value of the land for that use should be taken into account. This court held that just compensation to which an owner is entitled in eminent domain is the value of the land

taken considered with reference to the uses for which the land is then adapted, and it excluded, as too remote and speculative, evidence as to the alleged adaptability of the land for a special commercial business, in the absence of a showing on the record that there was an available market for the product at the time of the taking.

In the present case, the referee found that there was no existing market for the building as a printing plant and that its marketability on the date of the taking was not enhanced by its special qualities.

In order for the value of the plaintiff's premises to be increased by the unusual load-bearing capacity, there must have been a showing not only that the premises were physically or specially adaptable for the particular use upon which the plaintiff solely relied, i.e., a printery, but also that there was a reasonable probability that they would be so used within a reasonable time; otherwise the special use would be too remote and speculative to have any legitimate effect upon the valuation. See *United States ex rel. Tennessee Valley Authority* v. *Powelson,* 319 U.S. 266, 275, 63 S. Ct. 1047, 87 L. Ed. 1390, cert. denied, 321 U.S. 773, 64 S. Ct. 612, 88 L. Ed. 1067; 29A C.J.S., Eminent Domain, § 160; 1 Orgel, Valuation under Eminent Domain (2d Ed.) §§ 29, 31; 4 Nichols, Eminent Domain (3d Ed.) § 12.314. Under circumstances in which the usual test of market value fairly ascertained is inefficacious owing to the unavailablity of a willing buyer, the value must be determined from the opinions of well-informed witnesses, based upon all the uses for which the property is suitable, as a means of fixing what a reasonable purchaser would probably be willing to pay for it; and "[t]he highest and most profitable use for which the property is adaptable

and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held." *Olson* v. *United States*, 292 U.S. 246, 255, 54 S. Ct. 704, 78 L. Ed. 1236; 27 Am. Jur. 2d, Eminent Domain, § 281. It was for the referee to determine the weight to be given the testimony, and he was not compelled to rely, as argued by the plaintiff, on "information as to the sales or rentals of comparable structures," which were "specifically designed and built for printing operations," as the measure of value under the circumstances of this case. He was entitled to consider whether, upon credible evidence, the use of the premises for the purpose claimed by the plaintiff was economically feasible.

As stated above, the referee found that no printing or bookbinding concern would build or lease a five-story building of this type, at this location, on the date of the taking. The plaintiff concedes in its brief that this decision as to the lack of a ready market was within the referee's discretion. In any event, there was ample evidence to support the finding on this issue. The additional findings, that the market value of the property on the taking date was not enhanced by the unusual strength of the structure and that the highest and best use of the subject property was as a commercial building, rented to multiple tenants for different types of uses, such as manufacturing and storage, follow logically from the finding that no printing concern would build or lease a structure such as the one here in question.

Another claim of the plaintiff is that an appropriate method for evaluating its building, known as the reproduction less depreciation approach, or the cost

approach, was rejected because of a failure to understand the method. We have frequently stated that no one method of valuation is controlling and that the referee may select the one most appropriate to the case before him. *Brothers, Inc.* v. *Ansonia Redevelopment Agency*, supra, 45; *Research Associates, Inc.* v. *New Haven Redevelopment Agency*, 152 Conn. 137, 142–43, 204 A.2d 833. "The general rule . . . is that the proper measure of damages is not the market value of the land plus the reproduction cost of the improvements, but the market value of the property as improved, in view of all the uses to which it is adaptable and available. . . . [A] structure or improvement may add little or nothing to the value unless it is of such a character that it is adapted to some prospective use which affects the market value of the land." *People* v. *Ocean Shore R., Inc.*, 32 Cal. 2d 406, 427–28, 196 P.2d 570; 27 Am. Jur. 2d, Eminent Domain, § 291. The evidence printed in the defendant's appendix shows that the three experts who testified indicated that no prudent investor would reproduce the building in question, and two of the three found the cost approach inappropriate. The plaintiff's expert testified, inter alia, that, in his opinion, "the income approach is the reflection of the value of the property." In *Brothers, Inc.* v. *Ansonia Redevelopment Agency*, supra, we rejected the contention urged here, that the referee was required, as a matter of law, to apply the reproduction less depreciation method of valuation to property devoted to a special commercial use. The referee's rejection of the cost approach and his use of the capitalization of income approach were legally justified.

The final claim of error pursued by the plaintiff is that the city of Hartford had assessed taxes against

the plaintiff based on a valuation in excess of the judgment. It appeared in the appraisal report of the plaintiff's expert witness that from 1961 through 1964 the assessed value of the subject property was about $776,000, and in 1965 it was assessed at $592,650. It does not appear that this claim was raised before the referee, and for that reason it should be denied. *Paley* v. *Connecticut Medical Examining Board,* 142 Conn. 522, 529, 115 A.2d 448. In any event, the general rule is that assessed valuations made without the participation of the owner, as is the case in Connecticut; General Statutes § 12-64; are not usually admissible on the issue of the value of property taken by eminent domain. 1 Orgel, op. cit. § 150; 2 id. § 246; 27 Am. Jur. 2d, Eminent Domain, § 441; note, 39 A.L.R.2d 209, 214; 29A C.J.S., Eminent Domain, § 273 (4); see also *Mead* v. *Greenwich,* 131 Conn. 273, 277, 38 A.2d 795; *Martin* v. *New York & N.E.R. Co.,* 62 Conn. 331, 343, 344, 25 A. 239. Under the facts of this case the award of an amount below the city tax assessment cannot be said to constitute an abuse of discretion.

There was ample evidence to support the referee's finding of facts and his determination of the method of valuation.

There is no error.

In this opinion the other judges concurred.