HENRY J. MAZZOLA ET AL. *v.* COMMISSIONER OF TRANSPORTATION OF THE STATE OF CONNECTICUT

LOISELLE, BOGDANSKI, SPEZIALE, HEALEY and PARSKEY, Js.

Argued February 15—decision released August 8, 1978

*Victor Feingold,* assistant attorney general, with whom were *Kenneth N. Tedford,* assistant attorney general, and, on the brief, *Carl R. Ajello,* attorney general, for the appellant (defendant).

*John R. Fitzgerald,* with whom was *Milton L. Jacobson,* for the appellees (plaintiffs).

PARSKEY, J. The defendant condemned for highway purposes 2.7 acres of the plaintiffs' land on the northerly side of route 6 in the town of Windham and took easements to the slope and grade upon portions of the plaintiffs' remaining land, thereby denying them of any right of access from the land directly onto the relocated route 6. The defendant assessed damages at $225,300 and filed a statement of compensation and a deposit for that amount with the clerk of the Superior Court. Thereafter, the plaintiff applied to the Superior Court for a review of the compensation and the court referred the matter to a state referee, who, acting as the court, heard evidence, viewed the property and found the

property to have a fair market value of $248,400. The defendant has appealed to this court from the judgment rendered in the plaintiffs' favor.

The unchallenged finding supports the following facts: On August 14, 1970, the plaintiffs, hereinafter Mazzola, owned 24.2 acres of land on the northerly side of route 6 in the town of Windham. Mazzola bought this acreage in 1953 and had then begun a mobile home park and mobile home sales business. On August 14, 1970, the defendant condemned for highway purposes 2.7 acres of the Mazzola property. The condemnation also included easements to slope and grade upon portions of the remaining Mazzola land and thereby denied any right of access from the Mazzola property directly onto route 6. At the time of the taking, the Mazzola property, which was being operated as a mobile home park, contained 131 trailer spaces or hook-ups and auxiliary stores and businesses. At that time there were no zoning regulations, as such, in the town of Windham affecting this property. Route 6 is a cross-state highway. The taking deprived the Mazzola property of all the frontage which the land had on the north side of this route. One of the purposes of the taking was to reconstruct route 6, as a result of which the road would be at a grade substantially higher than the present grade. Upon completion of the relocated route 6 access to the Mazzola property could be gained only by means of a narrow, inconvenient and, in the event of fire, hazardous roadway.

From 1953 to the passage of a mobile home ordinance by the town of Windham in 1959 the mobile home park had expanded to sixty hook-ups. After 1959 the park continued to expand. The plaintiffs

furnished the town authorities with information as to the number of mobile homes which were located in the park on October 1 of each year. There were over 100 units reported to the town.

In 1959 the town adopted a "mobile home ordinance." This ordinance prohibited the establishment or maintenance of a mobile home or a mobile home park without first obtaining a permit from the board of selectmen. The ordinance established certain requirements applicable to mobile homes and mobile home parks but provided that, with the exception of sanitary regulations, the board of selectmen was authorized to waive all requirements as may be required by the specific circumstances.

The plaintiffs never applied for a permit to operate their park but customarily permits were mailed to them by the town authorities. The early permits contained no specification as to number; the later ones did—the largest number being eighty.

Peter R. Marsele was employed by the defendant to appraise the premises. After viewing the premises and making an investigation of the mobile home park permit with town officials he rendered an opinion that the Mazzola property had suffered damages in the amount of $225,300. The state referee, after viewing the premises and taking into account the Marsele appraisal together with the effect of relocating and restoring independent plumbing upon the after-take valuation, fixed just compensation at $248,400. He deducted the sum of $225,300 already paid by the defendant and allowed 6 percent interest on the balance.

The defendant filed fifteen discursive claims of law. The referee synthesized these into five claims in his finding. The defendant asserts that in so

doing the referee did not comply with Practice Book, 1963, § 619, which requires that the finding state the claims of law substantially as they were made at the trial. Section 619 must be read together with Practice Book, 1963, § 223 which requires that claims of law be stated distinctly. This rule contemplates that such claims are to be stated clearly and concisely so that they may be readily comprehensible both to the litigants and the trial court. In the absence of such precision the trier can hardly be faulted for attempting to distill from the defendant's wordy conglomerate the essential legal ingredients for the consideration of his claims on appeal. Although the trial referee's distillation could have been expanded so as to present the defendant's claims in somewhat more detail we have considered this deficiency in our examination of the substance of the claims. There is, however, one essential claim which has been omitted and which should be included. The defendant claimed that in arriving at his valuation the referee failed to exclude those lots or spaces which did not conform to the requirements of the Windham mobile home ordinance and for which the requirements could not be legally waived. We correct the finding accordingly. Practice Book, 1963, §§ 619, 627.

The defendant assigns error for failure of the referee to include in his finding certain paragraphs of the draft finding which are claimed to be undisputed. These paragraphs relate to the permit issued to Mazzola for 80 spaces, the actual use of 130 spaces by Mazzola at the time of the taking, the fact that Marsele's appraisal was based on such use, the location of the water meter and the feeling of the state project engineer that this meter would have to be relocated away from the service road.

In their brief the plaintiffs concede these paragraphs and we correct the finding accordingly. Practice Book, 1963, §§ 627, 628. An additional paragraph respecting a later change of thinking on the necessity of relocating the meter is neither conceded nor undisputed, and therefore affords no basis for correction of the finding. It is axiomatic that a fact is not undisputed merely because it is uncontradicted. *O'Connor* v. *Dory Corporation,* 174 Conn. 65, 70, 381 A.2d 559. The remaining assignments referable to the finding are considered in the opinion. Those which seek to add facts which will not affect the result have not been considered. *E & F Realty Co.* v. *Commissioner of Transportation,* 173 Conn. 247, 249, 377 A.2d 302. Those which have not been briefed are considered abandoned. *Perley* v. *Glastonbury Bank & Trust Co.,* 170 Conn. 691, 694, 368 A.2d 149 .

The defendant's principal assignment is that the referee erroneously included in his valuation portions of the Mazzola property devoted to an unlawful use. The referee concluded that the question of whether the mobile home park was being operated in violation of the ordinance was a technical one, the reasonable probability being that if, in fact and law, a violation existed a waiver could be obtained.

The rule in any condemnation case is just compensation. Conn. Const. art. I § 11. Where, as in this case, there is a partial taking just compensation is measured by the difference between the fair market value of the whole tract before the taking and the fair market value of the remainder. *Lynch* v. *West Hartford,* 167 Conn. 67, 73, 355 A.2d 42; *Meriden* v. *Ives,* 165 Conn. 768, 773, 345 A.2d 13. The "fair market value" is the price that a willing

buyer would pay a willing seller based on the highest and best possible use of the land assuming, of course, that a market exists for such optimum use. *Connecticut Printers, Inc.* v. *Redevelopment Agency,* 159 Conn. 407, 411, 270 A.2d 549.

Where the use appears to be subject to certain restrictions or limitations the trier must first determine whether these impediments do in fact exist and if so whether it is reasonably probable that they may be removed in the near future. See 4 Nichols, Eminent Domain (3d Ed.) § 12.3143. In making such determinations the trier is not only giving due consideration to everything by which value is legitimately affected; *Holley* v. *Torrington,* 63 Conn. 426, 433, 28 A. 613; but he is also taking into account those factors which a willing buyer and willing seller would consider in fairly negotiating an agreement. *Budney* v. *Ives,* 156 Conn. 83, 88, 239 A.2d 482.

The "mobile home ordinance" contains provisions applicable to mobile home parks and to single mobile homes. Section VI of the ordinance contains a number of requirements for mobile home parks including those relating to sanitary regulation. Section IX[1] authorizes the board of selectmen to waive all these requirements except those that pertain to sanitary regulations.

The defendant challenges the validity of the waiver provision. The defendant correctly observes

[1] Section IX (amended effective November 18, 1961), entitled "Exceptions," provides: "This ordinance, as amended, after the effective date thereof, shall apply to all existing mobile home parks and individual mobile homes; provided, however, . . . that the Board of Selectmen may waive all other requirements except those pertaining to the sanitary requirements as set forth in Section VI, subdivision 'G,' 'H' and 'K,' . . . as may in its judgment be required by the specific circumstances."

that the court was obligated to determine the reasonable probability of a legal construction respecting the waiver provision which any willing buyer and seller would consider in assessing the value of the subject property. *Talarico* v. *Conkling,* 168 Conn. 194, 197, 362 A.2d 862. In making that determination the trial court would be required to examine the language of the waiver provision so as to ascertain whether it contains the requisite specific standards for guidance of an administrative body. *Sonn* v. *Planning Commission,* 172 Conn. 156, 159, 374 A.2d 159; *Aunt Hack Ridge Estates, Inc.* v. *Planning Commission,* 160 Conn. 109, 115–16, 273 A.2d 880. Such determination would necessarily involve a consideration of the fact that as administrative guidelines the words "specific circumstances" in the mobile home waiver provision have the same elastic qualities as the words "unusual topography" which we discountenanced in *Sonn* v. *Planning Commission,* supra, 160, or "practical difficulties" which we rejected in *Delaney* v. *Zoning Board of Appeals,* 134 Conn. 240, 244, 56 A.2d 647, and that therefore it was not reasonably probable that the waiver provision would be upheld. This being so, because the referee was limited to a consideration of those factors which legitimately affect value; *Housing Authority* v. *Lustig,* 139 Conn. 73, 76, 90 A.2d 169; *Andrews* v. *Cox,* 127 Conn. 455, 458, 17 A.2d 507; he could not consider the valuation of those spaces which could not comply with the requirements of the mobile home ordinance unless the use was otherwise permissible. If the use was permissible the nonexistence of a permit might be technical, in which case the trier could consider what effect, if any, such technical noncompliance might have on the valuation.

One approach which the referee considered was the probability that a waiver could be obtained. The only way this could be accomplished in the face of a probably invalid waiver provision would be by amendment to the mobile home ordinance. We judicially notice that under General Statutes § 7-157 ordinances are adopted by the legislative body of the town and that for unconsolidated towns such as the town of Windham the legislative body is the town meeting. General Statutes § 1-1 (m). To predict what any group of voters may do from time to time is hazardous at best, is much too speculative to have any legitimate effect upon valuation; *Connecticut Printers, Inc.* v. *Redevelopment Agency,* 159 Conn. 407, 412, 270 A.2d 549; and is not an appropriate subject for judicial inquiry in a condemnation proceeding.

We next consider whether the remainder of the mobile home ordinance is severable in the face of the probable invalidity of the waiver provision. Although the ordinance contains a separability provision[2] such provision does not conclusively establish severability but rather creates a rebuttable presumption in favor of it. *Burton* v. *Hartford,* 144 Conn. 80, 89-90, 127 A.2d 251. In considering the question of severability of two parts of a challenged legislative enactment, "the test is whether they are so mutually connected and dependent as to indicate a legislative intent that they should stand or fall together." *Amsel* v. *Brooks,* 141 Conn. 288, 300, 106 A.2d 152. Applying this test to the mobile home

---

[2] Section XI, entitled, "Separability," provides: "Each and every provision of this ordinance shall be deemed a separate, distinct and independent provision and the invalidity of any provision or section thereof shall not affect the validity of the remaining sections or provisions of this ordinance."

ordinance we cannot conclude that the waiver provision is so integral a part of the ordinance that the remainder of the ordinance cannot exist without it.

Because the factual record before us is unclear on the subject we have not considered the probable impact of any nonconforming uses on the question of valuation. The record discloses that sixty hook-ups were in existence before the adoption of the mobile home ordinance. These hook-ups were equipped with water, sewage and electrical facilities. Most of them did not conform to the space requirements of the ordinance. Although they were nevertheless subject to the ordinance; *Karen* v. *East Haddam,* 146 Conn. 720, 732–33, 155 A.2d 921; this does not mean that they could not be regarded as prior nonconforming uses; see *Jensen's Inc.* v. *Plainville,* 146 Conn. 311, 315, 150 A.2d 297; could not be counted as part of the eighty permits actually issued and their economic value could not be considered in assessing the value of the condemned land. *Gebrian* v. *Bristol Redevelopment Agency,* 171 Conn. 565, 573, 370 A.2d 1055. Of course, the governing principle would still be whether the ordinance as applied to these prior nonconforming uses is so clearly unreasonable, destructive and confiscatory as to be unconstitutional. *Figarsky* v. *Historic District Commission,* 171 Conn. 198, 207, 368 A.2d 163; *State* v. *Hillman,* 110 Conn. 92, 105, 147 A. 294.

Finally, the defendant questions the award of damages for relocation of a water meter. The referee found that the water meter pit, for the supply of water to the Mazzola park, was located a few feet into the access road to route 6 and that because of the taking the pit would have to be abandoned and a new pit excavated with trenches, fill-

ings, hydrants and a new structure installed. Although this finding is disputed there is ample evidence to support it. *Klein* v. *Chatfield*, 166 Conn. 76, 80, 347 A.2d 58.

The referee also found that the cost of relocating the plumbing would be $15,000 and the cost of trenching $8100. While the cost to cure specific injuries resulting from the taking are not recoverable as such, it may be considered by the trier in determining the extent of any decrease in value in the property remaining after condemnation. *Bowen* v. *Ives*, 171 Conn. 231, 236–37, 368 A.2d 82. The referee found the damages sustained by the plaintiff to be $248,400, which is the difference between the referee's finding of the value of the land before the taking ($651,700) and the value after the taking ($403,300). It is, therefore, apparent from the finding that the referee did take the costs to cure into account in making his before and after valuation of the market value and he was correct in so doing.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.