[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This an appeal by George L. Tryon and Elaine D. Tryon from the assessment of damages in the amount of $27,600 paid by the defendant for the partial taking by eminent domain on January 11, 1990, of their property situated on the southerly side of Route 94, Hebron Avenue, in the Town of Glastonbury, for the layout, alteration, extension, widening, change of grade and improvement of the highway.
The plaintiffs' property before the taking consisted of a rectangular parcel of land containing about 1.66 acres with a frontage on Hebron Avenue of 451.15 feet and an average depth of about 175 feet. The site was improved CT Page 1296 with a two-story commercial and residential structure known as Nos. 800-802-804 Hebron Avenue and situated 16 feet from the former highway line. The western portion of the first floor was retail and the remainder of the building was residential. Immediately adjoining the front of the building was a five-foot sidewalk on which were located two retail ice-vending machines and the lowest two steps of the stairway leading into the residential portion of the building. The 11-foot wide area between this sidewalk and the highway was paved with amesite down from a grade one step below the walk to the level of the roadway. Because there was no curbing or other separation from the highway, vehicular and pedestrian access to the property was located along its entire road frontage of 451.15 feet.
Because of the convenience available, eastbound and westbound motorists stopping at the Addison Package Store located in the westerly front portion of the building utilized this area adjoining the roadway for parallel parking in preference to parking on either side of the building. vehicular customers, however, utilized the entire frontage of the property for easy ingress and egress because of the absence of restrictive driveways and raised curbing. Since the property was located in a Planned Industrial Zone, the package store had a drive-in trade, rather than walk-in business.
The portion of the plaintiffs' land taken is bounded: Northerly by Route 94, Hebron Avenue, 451.15 feet; Easterly by land now or formerly of Edith Demeter, 14 feet; Southerly by the plaintiffs' remaining land, designated "Taking Line" on the map hereinafter referred to, 257 feet; Westerly by the plaintiffs' remaining land, designated "Taking Line," 4 feet; Southerly by the plaintiffs remaining land, designated "Taking Line," 80 feet; Easterly by the plaintiffs' remaining land, designated "Taking Line," 4 feet; Southerly by the plaintiffs' remaining land, designated "Taking Line," 115 feet; and Westerly by land now or formerly of Triple S Associates, 14 feet.
Said parcel contains 0.138 of an acre, more or less, together with all appurtenances, all of which more particularly appears on a map entitled: "Town of Glastonbury, Map Showing, Land Acquired From George L. Tryon et al. by The State of Connecticut, Hebron Avenue — Route 94 Improvements, Scale 1" = 40', August 1988, Robert W. Gubala, Transportation Chief Engineer — Bureau of Highways." (53=155-16).
Said premises were taken together with a right to construct driveways and a concrete sidewalk and to install bituminous concrete lip curbing within an area of 0.029 of an acre, more or less, and located between and opposite approximate Stations 58+53 and 60+58 right, Base Line Present Hebron Avenue, Route 94, as more particularly shown on said map. Said right shall terminate automatically upon completion of the work by the state.
It is readily apparent from the taking map and the evidence in this case that the 14-foot taking line was gerrymandered to 10 feet to exclude the plaintiffs' building known as Nos. 800-802-804 Hebron Avenue from possible inverse condemnation by the physical denial of all access to the CT Page 1297 front and main entrances to the package store and all residences in the structure. Since the building was 16 feet from the roadway, the taking of 14 feet of this front yard would leave only 2 feet of open space from the highway to the building, hardly sufficient space for a safe entrance and exit.
Even though this may be the only jog in the southerly line of the improved highway, there is no legal prohibition against such a break in the straight highway line if the safety of persons using the highway and adjoining lands is not compromised. That is the presumed responsible judgment that the defendant, his highway designers and engineers have made. The only restriction on such a broken line taking is that the owner of the land is entitled to just compensation. That ultimate conclusion is for this court to make.
The property is located in a Planned Industrial Zone. This is a general industrial zone which allows for most uses consistent with light industry, including manufacturing, printing, wholesale distribution, warehousing and offices. Retail trade is not permitted, but wholesale trade is. Professional offices are allowed with a special permit. The parcel is above average in location and size for industrially zoned sites in this market area.
The relevant building requirements in this zone for our inquiry are as follows: (1) All principal structures, with their accessory structures, shall cover not more than 20% of the lot area. (2) Open space shall be provided and set aside in an amount at minimum equal to twice the area of the building lot coverage. (3) There shall be a minimum front yard of 40 feet, side yard of 25 feet, and rear yard of 25 feet. While the plaintiffs' westerly line before the taking was 200 feet and the easterly line has 151.64 feet, the taking of 14 feet from the easterly line has shortened that boundary to 137.64 feet. Deducting from that dimension the front yard of 40 feet and rear yard of 25 feet, the buildable portion of the lot along the eastern side yard has been reduced to approximately 72.64 feet. A further limitation on building in this side yard which must be considered in this connection is imposed by the wetlands found in the northeast corner of the property for a width of about 100 feet.
The present building and its retail use are nonconforming. Before the taking, the front yard of 16 feet lacked 24 feet to meet conformity. After the taking this nonconformity as extended to 31 feet of the required 40 feet. Although the nonconforming building is permitted to continue under the zoning regulations, no extension or enlargement of the nonconforming structure which increases its nonconformity shall be made. Upon the completion of the highway improvements, the taking will result in a termination of the preferred customer parking in front of the package store parallel to the highway. On both viewings of the property this choice of parking was evident. Thereafter, patrons of the store will have to park on either side of the building and enter from the new 5 foot concrete walk 1 foot away from the new roadway. For purposes of safety, a metal handrail 3 1/2 feet in height will be constructed on the outer edge of the walkway. CT Page 1298 Maintenance and liability of walk and handrail will be the responsibility of the plaintiffs and their successors in title. Additionally, the two retail ice-vending machines will have to be removed from in front of the building next to the package store and relocated to the side of the building, a location less visible to passing traffic and potential customers.
The highest and best use concept, chiefly employed as a starting point. in estimating the value of real estate by appraisers, has to do with the use which will most likely produce the highest market value, greatest financial return, or the most profit from the use of a particular piece of real estate. Connecticut Printers, Inc. v. Redevelopment Agency, 159 Conn. 407,411 (1970); State National Bank v. Planning Zoning Commission,156 Conn. 99, 101. In cases where a site has existing improvements on it, the highest and best use may very well be determined to be different from the existing use. The existing use will continue, however, unless and until land value in this highest and best use exceeds the total of the property in its existing use.
The court finds that the highest and best use of the subject property upon termination of its present use as a retail liquor outlet and residential structure will be for professional offices. Until such time its highest and best use with its present improvements is that of a retail liquor outlet and residential structure. A state franchise to sell liquor, such as that held here by the Addison Package Store, is a valuable privilege for a permitted location. It should not be surrendered easily, and then only for a greater financial return or profit.
The plaintiffs' appraiser used the cost approach in estimating the damages from the taking. He considered the market data and income analyses as inappropriate because of the lack of before and after data and the likelihood of error in making adjustments to sales or rentals. Three comparable land sales where utilized to obtain a value of the subject site as vacant. After making adjustments for location, size, shape, topography, utility and marketability, he concluded that the land alone, at $270,000 per acre, was worth $450,000. To obtain the value of the improvements, he utilized Marshall Valuation Service to estimate the building's reproduction cost at $154,519. After deducting therefrom the estimated depreciation of the structure, the small shed and site improvements, he valued all improvements at $113,970. The total value of the subject property before the taking in his estimation was $563,970.
Utilizing the cost approach in determining the component values after the taking, he found the land to be worth $410,000 and the improvements $77,044 for a total valuation of $487,044. Deducting this estimate from the valuation before the taking he concluded that the damages to the plaintiffs caused by the taking were $76,926.
Since the taking involved only the land and the site improvements, and did not affect the current improvements, the defendant's appraiser properly CT Page 1299 found the damages to be based solely upon the before and after taking valuations of the land alone. Based upon four comparable sales of land, he estimated the per acre value to be $200,000, and the total reduced of 1.66 acres to be $332,000. Utilizing the same base value for the reduced acreage of 1.522 acres remaining after the taking, he estimated the after taking value to be $304,400. By these calculations, he found the plaintiffs' damages to be $27,600, the amount paid by the defendant. He found no value to the temporary rights taken for the purpose of grading, and the construction of driveways, walkways, stairs, and metal handrail.
It is the charge of this court to make an independent determination of value and fair compensation for the property taken in the light of all circumstances, the evidence, the opinions of the expert witness, his knowledge of the elements that establish value and a viewing of the premises. Minicucci v. Commissioner of Transportation, 211 Conn. 383, 388
(1989). In performance of this duty, I find that the before taking value of the subject property was $373,500, and that the after taking value is $328,000. Damages, therefore, are assessed at $45,500.
Judgment may enter for the plaintiffs in the amount of $45,500, less $27,600 already paid, or an excess of $17,900, with interest on such excess from the date of taking to the date of payment, together with costs, and a reasonable appraisal fee of $750.
WILLIAM C. BIELUCH STATE TRIAL REFEREE