[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by Gideon Associates, a partnership, from the assessment of damages in the amount of $500 paid by the defendant for the taking by eminent domain on May 3, 1990, of their property in the Town of Coventry on the northeasterly side of Route 31, at its intersection with Route 275, and bounded: Southwesterly by Route 31, 52.90 feet; Northwesterly by Route 275, 58.68 feet; Easterly by land n/o/f/o Floyd B. Wass et al., 48.44 feet; and Southeasterly by land n/o/f/o Floyd B. Wass et al., 39.90 feet.
Said parcel contains 0.055 of an acre, more or less, together with all appurtenances, all of which more particularly appears on a map entitled: "Town of Coventry, Map Showing Land Acquired From Gideon Associates by The State of Connecticut, Conn. Route 31 Drainage and Safety Improvements, Scale 1" = 40', December 1989, Robert W. Gubala, Transportation Chief Engineer — Bureau of Highways." (32-115-2) Sheet 1 of 2. This property taken totally in fee shall be designated herein as Parcel 1.
Said premises were taken together with the following rights on portions of the plaintiffs' land located across from Parcel and on the southwesterly side of Route 31:
1. A right to grade within an area of 0.025 of an acre, more or less, and located between and opposite approximate Stations 151+30 and 152+88 right, Construction Base Line, Lake Street, as more particularly shown on the hereinafter referred to map;
2. A right to construct driveway within an area located between and opposite approximate Stations 151+53 and 151+83 right, said Construction Base Line, as more particularly shown on said map; and
3. A right to construct sidewalk within an area located between and opposite approximate Stations 103+31 and 103+35 right, Construction Base Line, Conn. Route 31, as more particularly shown on said map.
Said rights are more particularly shown and delineated on a map entitled: "Town of Coventry, Map Showing Land Acquired From Gideon Associates by The State of Connecticut, Route 31, Drainage and Safety Improvements, Scale 1" = 40', Aug. 1, 1989, Robert W. Gubala, Transportation Chief Engineer — Bureau of Highways." (32-115-2) Sheet 2 of 2.
Said three rights shall terminate upon completion of the work by the defendant. These temporary rights taken by the defendant shall be designated herein as Parcel 2.
The neighborhood in which the subject property is located is situated in the east central portion of Coventry. It is developed with a broad mix of uses, including small retail and office buildings and single and multi-family dwellings. The area lies on the northern fringe of Coventry's older central business district. Main Street (Route 31) is developed with CT Page 9310 a small strip shopping center, grocery store, gasoline station, real estate office, and other small businesses. The subject and surrounding properties are zoned Business C-1.
Route 31 is an asphalt paved state highway with curbing, storm sewers and street lights. Utilities available include telephone, electric and public sewer services. Water is provided by drilled wells.
Parcel 1 is located on the southeasterly corner of Routes 31 and 275. It is quadrilateral in shape, having four unequal sides. There is street frontage on Main Street (Route 31) of 52.90 feet, and on Stonehouse Road (Route 275) of 58.68 feet. The parcel is above grade and gently rolling in terrain. There is a ledge outcropping at its northeasterly corner. The property is vacant and unimproved.
The Business C-1 zone is a general commercial zone which allows uses such as clubs, taverns, hospitals, business services, hotels, offices, professional services, retail services and restaurants. Parcel 1 is nonconforming. It does not meet the minimum area requirement of 40,000 square feet, nor the frontage and depth requirements of 150 feet. Structural use of the property by itself is, therefore, excluded.
In the opinion of the defendant's appraiser the highest and best use of Parcel 1 is for highway purposes. That conclusion is unacceptable for it is self-serving in an eminent domain proceeding, and it does not fall within the definition of "highest and best use." "The `highest and best use' concept, chiefly employed as a starting point in estimating the value of real estate by appraisers, has to do with the use which will most likely produce the highest market value, greatest financial return, or the most profit from the use of a particular piece of real estate." Connecticut Printers. Inc. v. Redevelopment Agency, 159 Conn. 407, 411 (1970).
Because of its limited size, Parcel 1 is limited in its highest and best use to either a sale to an abutting owner, or to advertising purposes by one of the businesses in the vicinity. Off-premises or identity signs may be allowed on Parcel 1, subject to town zoning and sign regulations, as well as to state traffic and sign regulations. It is reasonably probable that such necessary approvals would be granted on application.
The defendant's appraisal, made by one of its staff appraisers, utilized the market approach in valuing Parcel 1. Comparable sales used in this valuation consisted of two land sales in Columbia and one in Andover. These sales ranged in price from $0.80 to $1.56 per square foot. With adjustments, the appraiser valued Parcel 1 at $0.16 per square foot, or a total value for 2,415 square feet of $386, which he rounded to $500, the defendant's assessment of damages paid to the plaintiffs. In the conclusion of the defendant's appraiser, "[d]ue to the limitations of the parcel a nominal payment is considered reasonable."
The plaintiffs' appraiser also used the market approach in his CT Page 9311 analysis. Two of his comparable land sales were located in Tolland, one in Colchester, one in East Hampton, and one in Marlborough. The characteristics of these properties were a closer comparison to the subject property than the sales utilized by the defendant's appraiser. The price per square foot of these comparables ranged from $1.91 to $3.32. Based upon these sales, the plaintiffs' appraiser valued Parcel 1 at $2.00 per square foot, for a total estimate of $4,830, rounded to $4,800.
The defendant assessed no damages, not even nominal damages, for the taking of the three temporary rights on Parcel 2. The defendant's appraiser offered this explanation: "It should be noted, as directed by the Administration Division, I did not appraise the property shown on sheet two of two since no compensation is warranted for the rights."
The assessment of damages to Parcel 2 caused by the taking of the three temporary rights has not been raised by the plaintiffs in this appeal. The plaintiffs, a family partnership, appeared pro se by two of its partners, Thomas G. Welles, Sr., and Thomas G. Welles, Jr. Their application for review of the statement of compensation was limited by its terms to the condemnation of Parcel 1 only. The appraisal report and testimony of their expert witness was confined to the valuation of Parcel 1, which had been taken in fee by the defendant. The court, therefore, will make no findings or conclusions with respect to any possible damage to Parcel 2 by the taking of the three temporary rights, since that question has not been put in issue before it.
It is the duty of this court to make an independent determination of value and fair compensation for the property taken in the light of all circumstances, the evidence, the opinions of the expert witness, his knowledge of the elements that establish value, and a viewing of the premises. Minicucci v. Commissioner of Transportation. 211 Conn. 383, 388
(1989). In performance of this duty, I find that the value of Parcel 1 of the plaintiffs' land at the time of taking was $4,800. Damages, therefore, are assessed at $4,800.
Judgment may enter for the plaintiffs in the amount of $4,800, less $500 already paid, or an excess of $4,300, with interest on such excess from the date of taking to the date of payment, together with costs, and a reasonable appraisal fee of $300.
William C. Bieluch State Trial Referee