[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff brings this appeal from the tax assessment of his property located in the Town of East Lyme, Connecticut at 16 Mostowy Road. The plaintiff brought this appeal pursuant to General Statutes § 12-117a and 12-119.[1]
Section 12-117a allows taxpayers to appeal the decisions of municipal boards of assessment appeals to the Superior Court.Second Stone Ridge Cooperative Corp. v. Bridgeport,220 Conn. 335, 339 (1991); Northeast Datacom. Inc. v. Wallingford,212 Conn. 639, 650 (1989). In a § 12-117a appeal, the trial court performs a two step function. The first step is requiring the plaintiff to show that he has in fact been aggrieved by the action of the board in that his property has been overassessed.Gorin's Inc. v. Board of Tax Review, 178 Conn. 606, 608 (1979);Konover v. West Hartford, 242 Conn. 727, 734 (1997). "[T]he taxpayer bears the burden of establishing that the assessor has overassessed its property." Xerox v. Board of Tax Review,240 Conn. 192, 204 (1997); see Ireland v. Town of Wethersfield,242 Conn. 550, 556-59 (1997). Only after the court determines that the taxpayer has met his burden of proving that the assessor's evaluation was excessive and that the refusal of the board of assessment appeals to alter the assessment was improper, may the court then proceed to the second step in the § 12-117a appeal and exercise its equitable powers to "grant such relief as to justice and equity appertains." General Statutes § 12-117a; O'Brien v.Board of Tax Review, 169 Conn. 129, 130-31 (1975); NewburyCommons LTD. Partnership v. Stamford, 226 Conn. 92, 104 (1993). "If a taxpayer is found to be aggrieved by the decision of the board of [assessment appeals], the court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the applicant's property." O'Brien v. Board ofTax Review, supra, 169 Conn. 131; Konover v. West Hartford, supra, 249 Conn. 735. "If the court finds that the property has been in fact overvalued, it has the power to, and should, correct the valuation." Hutensky v. Avon, 163 Conn. 433, 437 (1972).
The plaintiff, in his original complaint, challenged his assessment on the grand list of 1995, with later amendments to the complaint adding the grand list assessments for 1996 and CT Page 11526 1997. The subject property consists of approximately 200 acres located on the west side of Mostowy Road in East Lyme, Connecticut. It has 619 plus or minus feet of street frontage on the southern section of Mostowy Road and 280 plus or minus feet of street frontage on the northern section of Mostowy Road. Included within the property is Darrow Pond, which is about 50 acres in size. The topography consists of various elevations with some steep inclinations. The property is essentially unimproved land with the exception of an abandoned 8,000 square foot industrial building on the site with adjacent black top parking and fencing. The property is connected to municipal water and electrical services. In addition to the pond, the property includes other wetland areas adjacent to the pond. The property is located in a special use district under the zoning regulations of the Town of East Lyme. Permitted uses would include residential development and golf course development.
The relevant date of valuation of the property is October 1, 1991, when the property was revalued by the assessors of the Town of East Lyme. The assessor valued the property on the October, 1991 grand list at a fair market value of $1,464,500. For tax purposes, the property was assessed at 70% of the fair market value, which in this case was $1,025,150 consisting of land valued at $898, 660 and a building valued at $126,490. The plaintiff appealed to the East Lyme Board of Assessment Appeals on or before February 20, 1996 concerning the October 1995 grand list assessment. The Board of Assessment Appeals reduced the building assessment from $126,490 to $111,930, which resulted in a reduction of the total fair market value to $1,443,700 and the assessed value to $1,010,590. It is this valuation which is the subject of this appeal.
In 1989, the plaintiffs predecessor in title, CCNE Group Limited, purchased the property and obtained permits to develop the subject property along with two adjacent pieces into a golf course facility. The purchase price was $3,180,000. The project anticipated a golf course development of approximately 300 acres (the subject property plus adjacent pieces of 80 and 20 acres). The property was never developed as a golf course. The CCNE Group eventually defaulted on loans related to the acquisition and development of the property. The property was acquired by the lender and the lender was eventually acquired by the Federal Deposit Insurance Company (FDIC). The plaintiff eventually acquired the note from the FDIC and foreclosed on the property. At various times the options on the adjacent pieces lapsed, but CT Page 11527 at the time of trial the plaintiff controlled the entire 300 acre property and had current permits for the development of a golf course.[2]
The plaintiffs evidence at trial included maps of the property (Plaintiffs Exhibits A C); an appraisal report and addendum thereto (Exhibits D E); and a engineering report outlining the difficulties in developing the property as either a golf course or residential property (Exhibit B). In addition, testamentary evidence was presented by Jeffrey Torrance, an experienced golf course developer and one of the principals of the New England National LLC, the current owner of the property. Mr. Torrance testified about the history of the property and the difficulties in its development. Patrick Carraher, a landscape architect, testified in support of his report (Exhibit B). In addition, the plaintiff offered the testimony of its expert real estate appraiser, Charles Burr, who testified in support of his appraisal report and attachment (Exhibits D E).
The defendant introduced the testimony and appraisal of its expert real estate appraiser, Robert Flanagan. (Defendant's Exhibit 1). In addition, the defendant introduced the permits related to the property (Exhibits 2 3), as well as the East Lyme subdivision regulations (Exhibit 4). The defendant also offered the testimony of the East Lyme Zoning Enforcement Officer, Environmental Planner and Director of Planning.
The plaintiffs initial burden under § 12-1 17a is to merely establish overvaluation. Newbury Commons Ltd. Partnership v.Stamford, supra, 226 Conn. 104. (1993). "Whether a property has been overvalued for tax assessment purposes is a question of fact for the trier." Id., 103. "The trier arrives at his own conclusions as to the value of land by weighing the opinion of the appraisers, the claims of the parties in light of the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value." O'Brien v.Board of Tax Review, supra, 169 Conn. 136; Konover v. WestHartford, supra, 242 Conn. 735.
The defendant's appraiser, Mr. Flanagan, valued the property at $1,455,000, essentially the assessed fair market value. The basis of his valuation of the property was that its highest and best use was as raw land to be included in the development of a golf course. This was based on his knowledge of the history of the property, the proposed development, the permits which had CT Page 11528 existed for the project and intrinsic potential for such development (natural pond and rolling elevations). In his post trial brief the plaintiff argues that the defendant evaluated the property as a golf course but that is incorrect. Mr. Flanagan specifically indicated that he did not value the property as a golf course but as raw land to be developed as a golf course. In finding a value for such land he considered a competing use, residential development, and used as comparable sales data the sales of other raw land for residential real estate development. There were no comparables with respect to raw land purchased for development as a golf course. Based on the comparable sales, he valued the property at $7,300 an acre. Though Mr. Flanagan did not rely on the sale of the subject property on July 27, 1989, the court does consider that to be of some relevance in determining whether the property was overvalued at $1,464,500 on October 1, 1991. The purchase price for the property on July 27, 1989 was $3,180,000, or nearly $16,000 per acre. The July, 1989 sale may have been at the height of an overheated speculative real estate market; but it does suggest that the value of the property at less than 50% of such sale price 26 months later was not an overvaluation. The plaintiff argues that the property alone could not serve as an 18 hole golf course which appears to be correct; but with the continuing availability of adjacent raw land, there was no reason during any of the relevant period that the property could not be included in a golf course development.
"The "fair market value' is the price that a willing buyer would pay a willing seller based on the highest and best possible use of the land assuming, of course; that a market exists for such optimum use." Mazzola v. Commissioner, 175 Conn. 576, 581-82
(1978). In determining the highest and best use or optimal use of the property the trier of fact must consider whether there was a reasonable probability that in the reasonably near future the subject property could be so utilized. Minicucci v. Commissionerof Transportation, 211 Conn. 382, 385 (1989). It was reasonably probable in 1991 as it is today that the property will be included in a golf course development.
The court finds the evidence presented by the defendant regarding comparable sales of raw land for development (whether for golf course or residential use) more convincing than that presented by the plaintiff. Based upon the evidence presented, the court finds that the plaintiff has not met its burden of showing that the property was overvalued for tax assessment CT Page 11529 purposes.
Because the court finds that the property was not overvalued, the appeal is dismissed.
Robert F. McWeeny, J.