SORENSON TRANSPORTATION COMPANY, INC. *v.*
STATE OF CONNECTICUT

FLOYD HUNTER ET AL. *v.* STATE OF CONNECTICUT
(2639)
(2641)

BORDEN, SPALLONE and DALY, Js.

Argued November 16, 1984—decision released March 5, 1985

*Robert T. Morrin,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellant (state).

*Jane W. Freeman,* for the appellees (plaintiffs).

DALY, J. The plaintiffs own land in Guilford that can be reached only by crossing the railroad tracks at a crossing known as Sawpit Road, a dirt road. In January, 1983, the defendant state of Connecticut extinguished the plaintiffs' rights to cross and assessed the damages of the plaintiffs Floyd and Florence Hunter at $31,200 and the damages of the plaintiff Sorenson Transportation Company (hereinafter Sorenson) at $2200. The plaintiffs, claiming they had not been awarded just damages, appealed to the Superior Court from the statements of compensation. The matters were referred to a state trial referee for a reassessment hearing. The referee awarded $249,000 to the Hunters and $68,750 to Sorenson, plus interest. Also, a total of $14,801 was awarded for appraisal fees and fees for expert witnesses in both cases. From these judgments, the state has appealed.[1]

The trial referee found the following facts: On the basis of the testimony of the plaintiffs' engineer, the Sorenson property was worth $68,750 and the Hunter property was worth $459,000 for industrial use. An access road and water main, however, would have to be constructed on the Hunter property at a cost of $187,812. After deducting that cost, the referee reached the conclusion that $270,000 was the fair market value of the land before the taking, and $20,000 the value thereafter. Subtracting these figures netted damages in the amount of $249,000.[2] The state claimed that the cost of the access road would be considerably higher. Furthermore, the state argues, the road could not be built because a permit would have to be obtained from the state department of environmental protection, and a variance from the town would be required. Tes-

---

[1] A motion to combine these appeals was granted on June 8, 1984.

[2] Although we would have expected a figure of $250,000, the Hunters do not complain on appeal of the $1000 difference.

timony was adduced indicating Guilford's policy was to cooperate with developers.

On both appeals, the state claims that the court erred (1) in valuing the subject property on the basis of the existence of an access road that could not have been built, (2) in accepting the cost of an access road as presented in the written report of the plaintiffs' expert when the expert himself testified there would be additional costs for which he had not provided, (3) in accepting the exact value given the industrial land by the plaintiffs' appraiser when his appraisal was based upon mistaken assumptions of fact and improper appraisal theory, (4) in permitting the town assessor to testify concerning the assessed value of the premises, and (5) in awarding engineering fees to the plaintiff. The state's final contention is that the decisions are so clearly erroneous in view of the evidence in the whole record that a reversal is required under Practice Book § 3060D.

The first three issues relate to the referee's reliance on the testimony of the plaintiffs' experts concerning the building of the access road and the appraisal of the properties.

We believe that the evidence presented before the referee supports a finding that there was a reasonable probability that the required permits and variances would have been granted. See *Russo* v. *East Hartford,* 179 Conn. 250, 256, 425 A.2d 1282 (1979), cert. denied, 445 U.S. 940, 100 S. Ct. 1334, 63 L. Ed. 2d 773 (1980).

As has been stated, it is for the court to decide in its discretion whether an expert has qualified, and to determine what credence should be extended to him if he be qualified. The court has every right to lean more heavily upon the testimony of one expert than upon the testimony of another. *Sibley* v. *Middlefield,* 143 Conn. 100, 108, 120 A.2d 77 (1956). In the case of a conflict

in the opinions of experts, the court's duty is to accept that testimony which appears to be more credible. *Humphrys* v. *Beach,* 149 Conn. 14, 20, 175 A.2d 363 (1961); *Ball* v. *Branford,* 142 Conn. 13, 17, 110 A.2d 459 (1954); Holden & Daly, Connecticut Evidence (1966 & Sup. 1983) § 118 (c). The acceptance or rejection of the opinion of the expert witness is a matter peculiarly within the province of the trier of fact and its determinations will be accorded great deference by this court. *Johnson* v. *Healy,* 183 Conn. 514, 515–16, 440 A.2d 765 (1981).

It was not error for the trial referee to rely upon the plaintiffs' experts as opposed to the state's.

With respect to the admission of the town assessor's testimony, the general rule is that assessed valuations made without the participation of the owner, as is the case in Connecticut, are not usually admissible on the issue of the value of property taken by eminent domain. *Connecticut Printers, Inc.* v. *Redevelopment Agency,* 159 Conn. 407, 415, 270 A.2d 549 (1970). In order to constitute reversible error, however, the ruling must be both erroneous and harmful. The burden of proving harmful error rests on the party asserting it and the ultimate question is whether the erroneous action would likely affect the result. *Manning* v. *Michael,* 188 Conn. 607, 611, 452 A.2d 1157 (1982).

There is no indication that the trial referee was influenced by the assessor's testimony, so we hold that its admission was not reversible error.

In its next claim of error, the state maintains that the referee should not have awarded the plaintiffs $3000 in engineering fees for the plaintiffs' engineer's report, since that was not expert testimony but was prepared before trial. While General Statutes § 48-17a, which pertains to cases of abandoned or unsuccessful

condemnation proceedings, and § 48-17b, which pertains to cases of inverse condemnations, both provide that the owner shall be entitled to "his reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees," General Statutes § 48-26, which applies to condemnation proceedings such as these, provides for "reasonable appraisal fees and reasonable fees for expert testimony incurred by the property owner . . . ."

It would appear that if the legislature intended that an expenditure for an engineer's report would be reimbursed, it would have used the term "engineering fees" as it did in §§ 48-17a and 48-17b. Hence, we find that the referee was in error in awarding $3000 for the engineer's report.

The state's final claim is that the decisions are clearly erroneous. "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. See Practice Book, 1978, § 3060D. This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

The trial court was presented with conflicting evidence and it is apparent that credibility was a crucial factor. We cannot retry the facts or pass upon the credibility of witnesses. The trial court, moreover, examined the property involved in this condemnation. Our

Supreme Court has consistently held that the visual observations made by the trier on a visit to the property are as much evidence as the evidence presented for his consideration by the witnesses under oath. Id., 220. In determining the value of the property taken, the trier arrives at his own conclusions by weighing the opinions of the appraisers, the claims of the parties, and its own general knowledge of the elements going to establish value, and then employs the most appropriate method to determine the damages that result from the taking. Id., 220–21. The trial court has the right to accept as much of the testimony of the experts and the recognized appraisal methods which they employed as it finds applicable; its determination is reviewable only if it misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was obligated to regard. Id., 221. An examination of the record indicates no such action.

There is error in part, the judgments are set aside and the cases are remanded with direction to render judgments as on file except that the $3000 for the engineer's report should not be awarded.

In this opinion the other judges concurred.