[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This proceeding an appeal from the assessment of damage by condemnation that has come to the court on the wrong procedural track, to which it had been directed by the court clerk on instruction from the Civil Court Manager of the Court Operations Division. Instead of being entered on the court records as a separate civil action with payment of the entry fee required by General Statutes Section 52-259, this appeal and application for review of statement of compensation was filed, without payment of the statutory entry fee, as a farther pleading in the above-numbered and titled court docket previously created for the deposit with the clerk of the Superior Court of the assessed damages in the amount of $155,000. See City of Bristol v.Sebastiano A. Milano et al., Superior Court, Judicial District of Hartford-New Britain at Hartford, Docket No. 572222 (December 1, 1998) (23 Conn. L. Rptr. 523).
Dennes Malapetsas and Joanne M. Malapetsas, property owners, have appealed from the assessment of damage paid by the Town of East Hartford Redevelopment Agency for the total taking by eminent domain on May 20, 1998, pursuant to General Statutes Section 8-128, of their property, consisting of two (2) certain pieces of land, with the buildings thereon, situated on the northerly side of and known as Nos. 34-44 Burnside Avenue, in the Town of East Hartford, as part of the "Main Street/Burnside Avenue Redevelopment Plan," adopted and approved by the East Hartford Town Council in June 1996.
The owners have appealed under the provisions of General Statutes Section 8-132. In the adjudication of this appeal and review of statement of compensation, the court heard evidence, including the testimony of witnesses and expert witnesses, examined appraisal reports and other documentary evidence, and viewed the subject property and its surrounding area.
The subject property consists of two adjoining parcels of CT Page 6612 land which are designated in the legal description as "First Parcel," known as No. 34 Burnside Avenue, and "Second Parcel," known as Nos. 36-44 Burnside Avenue. The "First Parcel" is irregular in shape, has 50.28 feet frontage along Burnside Avenue, and contains a land area of approximately 17,900 square feet. The land is improved with a relatively large, old 3-story commercial/industrial building with a connecting 1-story building in the rear. The buildings are of frame construction. Most of the remaining land is improved with a bituminous concrete paved parking lot, except for the northeasterly corner of the site, which is unimproved. The site has two in-ground fuel storage tanks, one of 500 gallon capacity, the other of 1,000 gallon capacity. This entire parcel is relatively level at the grade of Burnside Avenue and is located approximately 400 feet easterly of its junction with Main Street.
The "Second Parcel," adjoining on the east and also irregular in shape, has 95 feet frontage along Burnside Avenue and contains a land area of approximately 11,490 square feet. The land is improved with a one-two story commercial/residential building. Part of the land is improved with a bituminous concrete paved parking area. There is a two-car frame garage at the rear of the site. This parcel is also relatively level at the grade of Burnside Avenue. There are no known in-ground fuel storage tanks on this parcel, as the heating boiler is gas-fired.
The property was purchased by the owners on December 14, 1985, for $200,000 for the principal reason of continuing a dressmaking business on the second and third floors of the building known as No. 34 Burnside Avenue upon the termination of their prior lease of said premises. The remainder of the premises was an incidental real estate investment. As the business subsequently expanded, a showroom for sale of dresses was opened in an adjoining building known as No. 42 Burnside Avenue. The first floor of No. 34 was leased by a candy factory, Burnham 
Brady, Inc. This tenancy ended in December of 1995. Thereafter, the owners intended to expand their business into embroidery work in this vacancy, and began remodeling the first floor, until being advised of the town's redevelopment plans for the property and neighborhood. On May 20, 1998, the owners were served with a notice to vacate the premises on or before August 18, 1998, with the proviso that occupancy after June 15th would be allowed at the monthly rate of $2,000. Use and occupancy terminated on September 20, 1998, without payment to the agency, for which the town seeks an order of this court for payment of $7,000. CT Page 6613
The subject property is an assemblage of two parcels that are used collectively for commercial purposes. Burnside Avenue, also known as state route 44, is a commercial area in the vicinity of the subject property. It is a bituminous concrete paved road improved with granite curbs, concrete sidewalks, street lights, storm sewers and all public utilities. The property is located in a Business 5 (B-5) Zone in the northerly portion of the town center. The neighborhood is comprised of a mixture of principally commercial and some residential uses, its businesses catering primarily to local residents. It is an old established area in the center of town on what was formerly the main road to Manchester before the extension of the interstate highway system through East Hartford.
The highest and best use analysis is an appraisal technique which demonstrates the most profitable and competitive use for a given parcel of real estate. It is defined as the reasonably probable and legal use of vacant land or an improved property which is physically possible, appropriately supported, and financially feasible that is maximally productive and results in the highest value. It was the considered opinion of all appraisers that since the land is improved with buildings that still have limited remaining functional lives, the highest and best use is the continuation of the existing uses for the remaining economic lives of the buildings. The court agrees with that conclusion. The scenario of this property at the time of taking compels the conclusion of its highest and best use being as presently improved, with its standing availability for future development into a modern customized commercial area. The court finds that the property is in a prime business location of the central area of town best suited for its current use and future development. It is a choice present and future location for the business uses allowable under its zoning classification. The location is incomparable outside the central business district of town.
The owners' appraiser utilized the income approach in determining his estimate of fair market value because he considered the cost and market comparison approaches to be inapplicable.
Since most of the property was owner occupied, he estimated reasonable economic income and expenses in his calculations. For building #1, No. 34 Burnside Avenue, he estimated its annual CT Page 6614 income in five parts or tenancies for a total of $84,096. For building #2, he utilized the actual rental of $6,000 for the restaurant located at No. 40. The remaining two tenancies at Nos. 42-44 were estimated for a total of $16,176, making the gross rental of the building $22,176. The third building, the two-stall garage, had an estimated annual rental of $144. The gross rentals for all buildings he estimated at $106,416. From that sum, he deducted a loss of rental due to vacancies at 20%, or $21,283, resulting in a gross effective income of $85,133.
For expenses in his valuation by income approach, the owners' appraiser used reasonable estimates, except for actual taxes of $6,604. The remaining expenses were estimated as follows: insurance — $3,000; water — $1,500; repairs and replacements — $10,000; management costs @ 5% — $4,300; and miscellaneous — $1,000; for total expenses of $26,404, and net income before depreciation of $58,729. The capitalization rate, or band of investment, was calculated in the following manner: first mortgage 70% x 10% — 7.00%; equity 30% x 11.0% — 3.30%; depreciation 33 year economic life building 70% x 3.0% — 2.10%; total rate — 12.40%. Capitalizing the net income of $58,729 at that rate, his fair market value of the subject property was $473,621, rounded to $474,000.
Two appraisal reports were submitted by the town in support of its condemnation damage. Both were prepared by local appraisers. The first was that of R.F. Hagearty Associates, Inc., prepared on April 17, 1997. In this appraisal, the sales comparison approach and the income capitalization approach were both considered relevant.
For the comparable sales approach to the valuation of No. 34 Burnside Avenue consisting of a 3-story commercial/industrial building with a connecting 1-story building in the rear, three commercial transfers were recognized. The first was property at 150-174 Park Avenue, East Hartford. This consisted of two warehouse buildings acquired by the Federal Deposit Insurance Corporation as receiver for a former bank and transferred by it on June 24, 1996, for $105,000. The second was property at 187 Prospect Street, East Hartford, consisting of two manufacturing/service units. This was also acquired by the FDIC as receiver for a closed bank. It was sold on January 22, 1996, for $70,000. The third comparable was located in New Britain. It consisted of a manufacturing and warehouse facility sold privately on December 11, 1995, for $69,000. CT Page 6615
In his market analysis and value conclusion respecting these comparable sales, the appraiser used the sale price per square foot as the unit of comparison. After applying indicated adjustments to the comparable sales, he concluded their adjusted sale price ranged from $3.01 to $3.77 per square foot. Weighing these sales against the subject property, he estimated the market value of the subject to be from $3.25 to $3.50 per square foot. Based upon his analysis of this market data, he concluded the indicated value by the sales comparison approach of No. 34 Burnside Avenue was $50,000.
In this valuation, the appraiser calculated the gross building area to contain a total of 14,970 square feet. The area of the basement formerly used as a gym or weight lifting facility was not calculated in his valuation of the structure.
For the comparable sales approach to the valuation of Nos. 36-44 Burnside Avenue consisting of a one-two story commercial/residential building and a two-car frame garage at the rear, four mixed use properties in East Hartford were recognized. The first was property at 58 Burnside Avenue. This consisted of a converted dwelling with an office on each of two floors. It sold on March 1, 1996, for $165,000. The second was property at 585 Burnside Avenue, consisting of a converted dwelling with a dentist's office on the first floor and an apartment on the second floor. It sold on February 1, 1995, for $90,000. The third comparable was found at 28-30 Connecticut Boulevard. It sold on June 18, 1996, for $98,000. This was also a converted dwelling with an office on each of three floors. The final comparable was located at 1076 Burnside Avenue. It sold on August 1, 1995, for $65,000. This was a converted cape style dwelling with an office/retail unit at the front of the first floor and an apartment at the rear of the first floor and on the second floor.
In his market analysis and value conclusion respecting these comparable sales, the appraiser again used the sale price per square foot as the unit of comparison, After applying indicated adjustments to the sales, he concluded their adjusted sale price ranged from $34.21 to $40.03 per square foot. Based upon his analysis of this market, he concluded the indicated value by the sales comparison approach of Nos. 36-44 Burnside Avenue was $100,000. Having estimated the market value of the manufacturing portion of the subject property to be $50,000 and the mixed use portion to be $100,000, the appraiser found the total market CT Page 6616 value of the two parcels of property known collectively as Nos. 34-44 Burnside Avenue to be $150,000.
In his income capitalization approach, this appraiser found the monthly rent roll of the rentals at 34 Burnside Avenue to be $3,400, there being a family lease and some vacancies at the time of his inspection. Various manufacturing/warehouse and commercial occupancy rentals in East Hartford, East Windsor and Somers were surveyed and analyzed. Based on these, the subject's annual market rental rates were estimated at $15,200 with the tenants paying for build-out, electricity and heat.
In his survey and analysis of 36-44 Burnside Avenue rentals, these were broken down according to the nature of the occupancy. For the restaurant and garment store, he found the annual rental to be $14,400, with the tenants paying for electricity and heat. Apartment rentals surveyed were for such premises on the same street. The annual rental rate and the market rental rate for the apartment on the subject property were considered equal at $6,000. The combined potential annual income was estimated at $35,600. Estimating a vacancy and collection loss of 15%, or $5,340, he calculated the effective gross income to be $30,260.
In his expense analysis, the appraiser considered the following items: real estate taxes of $6,797; insurance premiums of $4,000; water and sewer charges of $510; snow removal charges of $810; management fees of 5%, or $1,513; and maintenance, repairs, and replacement reserve of 5%, or $1,513. After deducting total expenses of $15,143 from the effective gross income of $30,260, the annual net operating income was $15,117. His overall capitalization rate was calculated to be 12%. Based on these calculations, the value indicated by the income capitalization approach was estimated to be $125,975, rounded down to $125,000, rather than up to the nearest multiple unit of $126,000.
After developing the sales comparison approach to valuation and the income capitalization approach, the appraiser concluded the former would be the more relevant in estimating the fair market value of the subject property at the time of the taking. Based upon the market data analyzed, it was his opinion that the "as is" market value of the fee simple estate, subject to a 12 month marketing period as of the time of his inspection on April 17, 1997, was $150,000. CT Page 6617
The second appraisal report submitted by the town in support of its award was that of Bernard J. Hovanec, prepared on June 23, 1997. This appraisal also used the direct sales comparison and income approaches in estimating the value of the subject property. For the comparable sales approach to the valuation of the commercial/industrial building at No. 34 Burnside Avenue, this appraiser considered four commercial transfers. The first was property at No. 187 Prospect Street, East Hartford, obtained by the Federal Deposit Insurance Corporation as the receiver for the failed Landmark Bank. It sold on January 22, 1996, for $250,000. The second was located at No. 19 Thomas Street, East Hartford, which sold on December 14, 1994, for $575,000. The third property was located at No. 47 Plantation Road, East Windsor, and sold on September 6, 1995, for $250,000. The fourth sale was the transfer of a former mill complex at No. 47 Main Street, Vernon, on December 29, 1995, for $150,000. This property had been purchased by the grantor almost ten years before for $605,000.
In his market analysis and value conclusion respecting these comparable sales, the appraiser made no comparison with the subject property by grid to arrive at their adjusted price per square foot. Instead, in narrative form he made a few percentage adjustments downward and estimated the property at No. 34 Burnside Avenue had an indicated value of $8.00 per square foot of building including land. By that calculation, he valued the building of 14,970 square feet at $119,760. Just as in the first appraisal of the town, the basement area of 9,254 square feet formerly used as a weight lifting facility or gym was not considered to add to the valuation of the structure.
Four additional sales of business/residential properties were used for comparable sales in valuing the adjoining premises at Nos. 36-44 Burnside Avenue. The first was property at No. 1 Broad Street, East Hartford. This was a converted dwelling with a dental office on the first floor and an apartment above. It sold on November 1, 1996, for $55,000. The second was a converted dwelling formerly with real estate offices on both floors. It was located at No. 1076 Burnside Avenue. This property had been obtained by the grantor bank through foreclosure. It sold on August 1, 1995, for $65,000. The third sale, as the first, also consisted of a dental office on the first floor and an apartment upstairs. It was located at No. 585 Burnside Avenue. This transfer took place on February 1, 1995, for $90,000. The fourth comparable sale was at No. 438 Burnside Avenue. This property CT Page 6618 contained a florist shop on the first floor, with an apartment above, and sold on November 14, 1994, for $69,900.
In his market analysis and value conclusion respecting these comparable sales, the appraiser made no comparison with the subject property by grid to arrive at their adjusted price per square foot. Instead, in narrative form he made a few general percentage adjustments downward and concluded that Nos. 36-44 Burnside Avenue had an indicated value of $25.00 per square foot of the building including land.
His totalization of this valuation, however, was as follows: "2,659 sq. ft. @ $20.00 = $53,180." This significant error of 20% in devaluation of Nos. 36-44 Burnside Avenue went undetected until his cross-examination at trial. The correct computation should have been $66,475, a difference of $13,295. Additionally, both of the two other appraisers, that of the owners and the town, testified that this building contained 2,748 square feet, a difference of 89 square feet, or $2,225 additional value. In recapitulation of indicated values, the appraiser combined the values of $119,760 and $53,180 for a total valuation of the subject property at $172,940, rounded to $173,000. In his cross-examination, his valuation was corrected by him to $186,235, an actual difference of $13,295 before rounding.
In his income capitalization approach, the appraiser found the annual rentals of Nos. 34 Burnside Avenue to be $21,760 and the annual rentals of Nos. 36-44 Burnside Avenue to be $42,892, with tenants paying for electricity and heat. The combined potential income was estimated at $42,892. Estimating a vacancy and collection loss of 15%, or $6,434, he calculated the effective gross income to be $36,458.
In his expense analysis, the appraiser considered the following items: real estate taxes of $6,797; insurance premiums of $3,750; management fees of 6%, or $2,187; maintenance and repairs at 10%, or $3,646; water use at $600; and snow removal costs of $2,000. Deducting total expenses of $18,980, he estimated net operating income to be $17,478. Capitalizing this income at 12%, the indicated value of the subject property by the income approach was found to be $145,650, rounded to $146,000. In his opinion, this was the estimated market value by the income approach as of his appraisal on June 23, 1997.
In his reconciliation and final value estimate, the appraiser CT Page 6619 was of the opinion that a value between the direct sales comparison approach of $173,000, without correction for the conceded error in his calculation and consequent undervaluation in the amount of $13,295, and his income approach of $146,000, namely $160,000, would best reflect the market value of the subject property.
Richard Buchanan, town assessor since 1987, testified for the agency. The town had undergone a statutory revaluation of all property effective as of the grand list of October 1, 1993. As a result of the townwide revision of assessments, the condemned property was appraised at $255,510, broken down as follows: land — $114,860; 34 Burnside Avenue — $81,460; 36-44 Burnside Avenue — $54,620; and two-car garage — $4,570. Based on an assessment ratio of 70%, the total assessment was $178,850. No modification, demolition, or improvement affecting the subject property and its valuation or assessment was made prior to the adoption of the redevelopment plan by the Town Council in 1996 and the subsequent taking of the Malapetsas property.
"[T]he general rule is that assessed valuations made without the participation of the owner, as is the case in Connecticut; General Statutes Section 12-64; are not usually admissible on the issue of the value of property taken by eminent domain."Connecticut Printers, Inc. v. Redevelopment Agency,159 Conn. 407, 415; Sorenson Transportation Co. v. State, 3 Conn. App. 329,332.
To support his testimony that commercial and industrial property values had declined between 1993 and 1996, the assessor referred to the statistics compiled by the Secretary of the Office of Policy and Management (OPM) pursuant to General Statutes Section 12-7 concerning the assessment and collection of local taxes required to be reported under General Statutes Section 12-9 for 1996. OPM's audit of sales of East Hartford commercial and industrial properties in that year found the median ratio of assessment to market price to be 92.2%, meaning that one-half of the sales in 1996 were above 92.2% of assessed value and one-half were below 92.2%. With this median ratio as a yardstick, he calculated the subject property assessed at $178,850 would expect to be sold for $193,980. While this testimony of the assessor is not evidence of valuation of the subject property, it does cast a shadow on the three appraisals furnished to the court by the parties. CT Page 6620
A judge trial referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of our courts with the duty of making an independent determination of value and fair compensation in the light of all circumstances, the evidence, his general knowledge and his viewing of the premises. Minicucci v.Commissioner of Transportation, 211 Conn. 383, 388 (1989);Birnbaum v. Ives, 163 Conn. 12, 21-22 (1972); Feigenbaum v.Waterbury, 20 Conn. App. 148, 153 (1989). It is his task to reach a result that gives the plaintiff as nearly as possible, a fair equivalent in money as just compensation for the property taken.Mathis v. Redevelopment Agency, 165 Conn. 622, 623 (1973);Feigenbaum v. Waterbury, supra, 153-54. In the performance of this duty, based upon all the circumstances, consideration of the evidence, general knowledge of the elements constituting value, and a viewing of the property and surrounding area, I find the value of the subject property to be $240,000.
Judgment may enter for the appellants in the amount of $240,000, less $155,000 previously paid, and also less payment of $6,334 due for use and occupancy of the premises, or an excess of $78,666, with interest on such excess at the rate of 8% per annum, together with costs and a reasonable appraisal fee of $1,000.
William C. Bieluch Judge Trial Referee