[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This proceeding is an appeal from the assessment of damage by condemnation that has come to the court on the wrong procedural track, to which it had been directed by the court clerk on instruction from the Civil Court Manager of the Court Operations Division. Instead of being entered on the court records as a separate civil action with payment of the entry fee required by General Statutes Section 52-259, this appeal and application for review of statement of compensation was filed, without payment of the statutory entry fee, as a further pleading in the above-numbered and titled court docket previously created for the deposit with the clerk of the Superior Court of the assessed damages in the amount of $92,500. See City of Bristol v. Sebastiano A. Milano et al.,45 Conn. Sup. 605.
Lorraine M. Orsini, property owner, has appealed from the assessment of damage paid by the Town of East Hartford Redevelopment Agency for the taking by eminent domain on March 23, 1998, pursuant to General Statutes Section 8-128, of her property, with the building thereon, situated on the northerly side of and known as No. 28 Burnside Avenue, in the Town of East Hartford, as part of the "Main Street/Burnside Avenue Redevelopment Plan," adopted and approved by the East Hartford Town Council in June 1996.
The owner has appealed under the provisions of General Statutes Section8-132. In the adjudication of this appeal and review of statement of compensation, the court heard evidence, including the testimony of witnesses and expert witnesses, examined appraisal reports and other documentary evidence, and viewed the subject property and its surrounding area. CT Page 7618
The subject property consists of about 9,075 square feet of land improved with a one-story commercial building containing about 2,312 square feet of gross building area, this building footprint covering about 25.5% of the total land area. The property is located on the north side of Burnside Avenue in the northwestern quadrant of town about 250 feet easterly of its junction with Main Street. Burnside Avenue, also known as state route 44, is a commercial area in the vicinity of the subject property. It is a bituminous concrete paved road improved with granite curbs, concrete sidewalks, lights, storm sewers and all public utilities.
The property is located in a Business (B-5) Zone in the northerly portion of the town center, about one mile, more or less, from town hall. The Burnside Avenue corridor is a primary commercial and residential roadway connected to the center of town by Main Street. The neighborhood is comprised of a mixture of principally commercial and some residential uses, its businesses, such as the restaurant-cafe with full liquor privileges conducted by the owner on the subject property, catering primarily to local residents. It is an old established area in the center of town on what was formerly the main road to Manchester before the extension of the interstate highway system through East Hartford. The land is at street grade and level.
The improvement on the property consists of a masonry and frame one-story structure approximately 34 feet wide and 68 feet long with two rooms and doorways facing the street. It has a frill unfinished basement and is in average condition. It was built in 1937 and expanded in 1962. There is a paved driveway along the southwest boundary of the property that extends beyond the building. The driveway is in average condition and is not suitable for customer parking. There is, however, street parking on both sides of Burnside Avenue. The front portion of the site, which has a maximum width of about 45.14 feet, is completely developed with the building and the driveway. The building is in average condition and is functional for use as restaurant and cafe. The floor plan is open and the layout includes a bar area to the southwest, a kitchen area to the northwest, open areas to the east and restrooms in the center. Building improvements include a gas-fired furnace and an automated central air conditioning system. The air conditioning system has a new compressor and air handler.
At the time of taking, the property was used for a restaurant and cafe with a full liquor license, a privilege of added commercial value to real estate because of its restrictions and limitations by zoning and liquor control authorities. Its use as a liquor dispensing outlet was legal, even though the structure did not conform to current zoning requirements concerning minimum lot area, frontage and side yards. Nonconformance is CT Page 7619 not adverse in this instance, and is typical as the improvements were constructed prior to current zoning enactments.
"The concept of highest and best use, chiefly employed by appraisers as a starting point in estimating the value of real estate, concerns the use that will most likely produce the highest market value, greatest financial return, or the most profit from use of that property." Robinsonv. Westport, 222 Conn. 402, 405-406, 610 A.2d 611 (1992). The question of the highest and best use of property is a question of fact for the trier. Greene v. Burns, 221 Conn. 736, 748; South Farms Associates Ltd.Partnership v. Burns, 35 Conn. App. 9, 16.
The highest and best use of the property at the time of the taking, in the opinion of the owner's appraiser, Peter R. Marsele, was a continuation of its present use as a restaurant with a full liquor permit. Bernard J. Hovanec, one of the town's two appraisers, agreed with that conclusion, but in these limiting terms: "Since the existing structure has a substantial remaining economic life, the highest and best use is its existing use for the remaining economic life of the building.
The second appraiser for the town, Richard F. Hagearty, agreed with Hovanec: "The site is presently improved with a building that is functioning as a cafe. The building generates income and contributes value to the site. The building is functional for its use as a cafe. There is no modification to the improvements that would produce a greater net return to the land." He then extended his opinion: "The highest and best use of the site as improved is as a commercial facility."
The court agrees with the conclusion of Marsele and finds that the highest and best use of the property was a continuation of its present use as a restaurant with a full liquor permit. The property is located in a prime business location of the central area of town well suited for its current local use and possible future development and remodeling as a restaurant and cafe with a full liquor license.
The owner's appraiser estimated the fair market value of the subject property by both the income and market sales approaches. The cost approach was not used. In his income valuation analysis, he estimated economic rental income based on retail store rents on Burnside Avenue of $6.00 per square foot because the property was owner occupied. His estimate of economic rent included the full liquor permit. He allowed $8.00 per square foot for the first floor of 2,312 square feet for a total of $18,496. The basement space was not in use at the time of appraisal, but could be put to use in part with renovations. For this, he estimated 800 square feet at $4.00 for an economic rent of $3,200, making the total net income before depreciation $21,696. Capitalizing this CT Page 7620 income at 12.4%, he estimated the property value to be $175,000.
In his market approach, the owner's appraiser made two comparisons of recent sales in East Hartford. The first sale was a transfer of approximately one-quarter acre of land fronting on George and Cherry Streets. This property was in a Business (B-3) zone and sold for $7.26 per square foot. The second transfer involved a one-story building without a basement occupied by a restaurant with a full liquor license located at No. 123 Park Avenue and having 1,370 square feet gross floor area. This parcel of land contained 18,600 square feet of land also in a Business (B-3) zone. Its street frontage was 180 feet. Park Avenue is northerly of Burnside Avenue and not very distant from the South Windsor town line. The unit price of the building area including the land footprint was calculated to be $62.04 per square foot. With a net adjustment of 20%, he estimated the subject property to be valued at $74.50 per square foot of gross floor area including the land underneath, making the value of the subject property of 2,312 square feet of gross floor area including land to be $172,444, or $172,000.
Bernard J. Hovanec, appraiser for the town, excluded the cost approach also because of the age of the building. He also excluded the sales comparison approach because of the lack of comparable sales of similar properties. Using rates for four liquor outlets in East Hartford, he estimated the economic rent applicable to the subject property to be $8.00 per square foot. Utilizing the first floor area of 2,346 square feet, the annual rent was calculated to be $18,768, or $1,564 monthly. Allowing for 10% vacancy loss, management fee of 6%, structural repairs of 5%, and taxes and insurance, net operating income was estimated to be $10,548. Using a capitalization rate of 11.25%, he valued the property at $93,760, rounded to $95,000.
Richard F. Hagearty, another appraiser for the town, first used the sales comparison approach in this appraisal. Four sales were utilized for comparison. The first was that of 123 Park Avenue utilized by the owner's appraiser. The second was located at 370 Burnside Avenue, a vacant property formerly used as a convenience store located about one mile east of the subject property. The sale included about one-quarter acre of land on which was located a one-story frame building of 1,068 square feet built 70 years ago on a slab and renovated in 1989. It was purchased for $82.40 per square foot of gross building area to provide parking for an abutting restaurant.
The third comparison was at 873 Wethersfield Avenue, Hartford, a short distance south of the Wethersfield town line. This property, consisting of a one-story masonry building of 1,354 gross building area with a full basement, was purchased for continued use as a bar and restaurant. It CT Page 7621 sold for $150,000, or $110.78 per square foot of building area including the land footprint. The fourth and final sale was located at 22 Windsor Avenue, Vernon, about ten miles northeast of subject. This was a two acre site, more or less, with wetlands in the rear. It contained a one-story frame building with full basement constructed in 1900 as a restaurant and was used as a cafe at the time of sale. The sale price was $75,000, or $42.69 per square foot of gross building area.
The subject property, having 2,312 square feet of gross building area was considerably larger than all four of these comparable sales, for which the appraiser made upward adjustments. Downward adjustments were made for site characteristics. In his final analysis and estimate of value after adjustments to these sales, the appraiser concluded that sales 1, 2 and 4 bracket an estimated value range for the subject, but most weight was given to sales 1 and 4 in estimating a market value for the subject property of $90,000 by the sales comparison approach, this value being equal to $38.93 per square foot of gross building area.
In this appraiser's income capitalization approach, he estimated the market rental rates by a rental survey for comparable cafe, restaurant and retail facilities, all in East Hartford. These included three cafes, one restaurant, two bakeries and one florist. Based on the subject's condition, size and liquor permit, he estimated its market rental rate to be $7.00 per square foot for a monthly rental of $1,350. Allowing 10% vacancy loss, 3% each for management fees and repairs, plus real estate taxes and insurance, he computed the annual net operating income to be $9,321. With a capitalization rate of 11%, he estimated the value of the subject property to be $84,736, rounded to $85,000, or $36.76 per square foot. Stating that the sales comparison approach best reflects the actions and thought process of owner users in the subject market, he concluded that the sales comparison approach, which he found to be strongly supported by the income capitalization analysis, should be given most weight in estimating the market value of the subject property. His estimate of the market value, therefore, was $90,000.
The subject property was purchased by the owner on November 16, 1980, for $90,000. The town had undergone a statutory revaluation of all property effective as of the grand list of October 1, 1993. As a result of the townwide revision of assessments, the condemned property was appraised at $192,140, broken down as follows: land — $93,630; and building — $98,510. Based on an assessment ratio of 70%, the total assessment was $134,500. The previous assessment was $60,820. No modification, demolition, or improvement affecting the subject property and its valuation or assessment was made prior to the adoption of the redevelopment plan by the Town Council in 1996 and the subsequent taking of the orsini property. CT Page 7622
"[T]he general rule is that assessed valuations made without the participation of the owner, as is the case in Connecticut; General Statutes Section 12-64; are not usually admissible on the issue of the value of property taken by eminent domain." Connecticut Printers, Inc.v. Redevelopment Agency, 159 Conn. 407, 415; Sorenson Transportation Co.v. State, 3 Conn. App. 329, 332. While this assessment is not evidence of valuation of the subject property, it does cast a shadow on the two appraisals furnished to the court by the town in the direction of the owner's appraisal.
Under our law, a judge trial referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of our courts with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises. Minicucci v. Commissioner of Transportation, 211 Conn. 382, 388
(1989); Birnbaum v. Ives, 163 Conn. 12, 21-22 (1972); Feigenbaum v.Waterbury, 20 Conn. App. 148, 153 (1989). It is his task to reach a result that gives the plaintiffs, as nearly as possible, a fair equivalent in money as just compensation for the property taken. Mathisv. Redevelopment Agency, 165 Conn. 622, 623 (1973); Feigenbaum v.Waterbury, supra, 153-54.
After viewing the site of the subject property, and after giving due consideration to the opinions of expert witnesses and to a knowledge of the elements that establish value, I find that the value of the subject property is $129,500. Judgment may enter for the appellant in the amount of $129,500, less $92,500 previously paid, or an excess of $37,000, with interest on such excess at the rate of 8% per annum, from the date of taking on March 23, 1998, to the date of payment, together with costs and a reasonable appraisal fee of $1,000.
William C. Bieluch Judge Trial Referee