[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This proceeding is an appeal from the assessment of damages incident to a condemnation. As with some recent decisions; see, e.g., Commissioner ofTransportation v. Connemara Court, L.L.C., 46 Conn. Sup. 623, 763 A.2d 696
(2000); Bristol v. Milano, 45 Conn. Sup. 605, 732 A.2d 835 (2000); the present case has also come to the court on the wrong procedural track, as a result of directions given by the court clerk on instructions from the civil court manager of the judicial branch division of court operations. It was not entered on the court records as a separate civil action and the entry fee required by General Statutes § 52-259 was not paid. Rather, this appeal and application for review of the statement of compensation was filed, without payment of the statutory entry fee, as a further pleading in the matter, having the above title and docket number, that previously had been created for purposes of depositing with the clerk of the Superior Court, the assessed damages in the amount of $150,000. See Commissioner of Transportation v. Connemara Court, L.L.C.,
supra, 623; Bristol v. Milano, supra, 605.
Frank S. Gencarelli, Trustee, and Joseph J. Algiere, property owners, have appealed from the assessment of damages paid by the Town of East Hartford Redevelopment Agency for the total taking by eminent domain on January 18, 2000, pursuant to General Statutes § 8-128, of their property, with the building thereon, situated on the westerly side of and known as 957 Main Street, in the Town of East Hartford, as part of the "Main Street Business District Redevelopment Plan," adopted and approved CT Page 14442 by the East Hartford Town Council on June 18, 1996.
Said premises are more particularly bounded and described as follows: Northerly by Governor Street, 134.75 feet; Southeasterly by Main Street, 107.78 feet; Southerly by land now or formerly of Charles B. Gioielli et al., 94.71 feet; and Westerly by land now or formerly of Charles B. Gioielli et al., 49.90 feet. The northwesterly, southwesterly and southerly corners are marked by iron pins.
The owners have appealed under the provisions of General Statutes § 8-132. In the adjudication of this appeal and review of statement of compensation, the court heard evidence, including the testimony of witnesses and expert witnesses, examined appraisal reports and other documentary evidence, and viewed the subject property and its surrounding area.
The subject property consists of about 8,712 square feet of land, being 0.20 acre, improved with a one-story masonry building containing about 1,665 square feet of gross building area. The building was constructed in 1920, and was subsequently remodeled in 1988 to its present use. There is a formica counter and display cases used for customer service. The building is 100 percent tenant occupied by a retail fast food franchise outlet known as The Whole Donut. Its seating capacity is 40 persons. There is a paved area of 6,000 square feet providing 12 parking spaces on this corner site. The property is located on the west side of Main Street, U.S. Route 5, and the south side of Governor Street, being the eastern end of an exit/entrance ramp off highway I-84. It is a short distance south of Burnside Avenue, state route 44. The business conducted on the subject property is highly exposed and convenient to local and highway traffic. There is adequate onsite parking available exclusively on the front side, a feature that is attractive to passing traffic.
The property is located in a Business (B-4) Zone within the core of the town center, and less than one mile distant to the north from the town hall. Uses permitted in the zone include most office, retail and business services, restaurants, and multi-family residential. The present use of the property does not conform to the zoning requirements in all respects, but the improvements predated the current zoning regulations. The subject property, therefore, is a legally permitted non-conforming use, and its non-conformance is not adverse. The neighborhood is comprised principally of commercial and business enterprises. The land is at street grade and level with a gentle upward slope toward the rear boundary line.
The highest and best use of the subject property is the keystone of its valuation. The highest and best use is: "That reasonable and probable use CT Page 14443 that supports the highest present value of vacant land or improved property, as defined, as of the date of appraisal." 9 P. Nichols, Eminent Domain (3d Ed. Rev. 1999) App. B2(h)-20, p. 14, quoting The Dictionaryof Real Estate Appraisal, published by the American Institute of Real Estate Appraisers.
In the opinion of the owners' appraiser; "The highest and best use of the subject property is for retail, preferably a retail use targeted at convenience for vehicle drivers. The location is a good one for attracting customers in vehicles because it is convenient (going-in [sic] and coming home from work) and has easy access. The site has been used as a fast food restaurant for approximately 20 years; the location has worked for businesses targeting people in their vehicles for all these years." The court agrees with this conclusion, The popularity today of fast food restaurants, coffee and doughnut shops catering to travelers, as well as to local neighborhoods, is an acknowledged fact. The Town's appraiser, however, is not that specific, stating merely that "the highest and best use of the subject property as improved is the continuation of the current use of the property as a retail store."
The owners' appraiser estimated the fair market value by both the income and market sales approaches. The cost approach was not used. In his comparable sales approach, he looked for free standing commercial buildings of similar size in a comparable location and neighborhood. The first sale consisted of a Dunkin Donuts fast food outlet at 444-450 New Park Avenue, West Hartford, on October 1, 1997, for $350,000, or $232.40 per square foot of building area. The property consisted of 0.88 acre of land with a one-story building having 1,506 square feet in a General Industrial district. The second sale was a fast food restaurant at 765 Colony Road, Route 5, Wallingford, on June 30, 1998, for $200,000, or $151.06 per square foot of building area. The property consisted of 0.22 acre of land with a one-story building having 9, 583 square feet in a General Commercial zone. The third and final sale was a franchise fast food outlet at 70 Ella T. Grasso Turnpike, Windsor Locks, on July 31, 1998, for $412,000, or $143.55 per square foot of building area. The property consisted of 1.22 acres of land with a one-story building having 2,870 square feet in a Business 1 district.
With adjustments he considered appropriate to these comparable sales, the indicated values (rounded) of the subject property ranged from $136 to $151 per square foot, and averaged $146.16. This average value, multiplied by 1,665 square feet contained in the building, indicated a market value of $243,356, or "rounded to the nearest $5,000," which the court deems excessive, he found the value of the subject property by the sales comparison approach to be $245,000. CT Page 14444
In his income valuation analysis, he estimated the potential gross rent, exclusive of expenses, to be $25 per square foot for 1,665 square feet, or $41,625 annual gross potential income. Allowing 7% for vacancy loss and collection expenses, the effective gross income was $38,711. Operating expenses were estimated at $5,307, leaving a net operating income of $33,404. Dividing the net operating income by an estimated capitalization rate of 10%, he calculated the value of the subject property by the income approach to be $334,040, which he rounded upward to $335,000.
Acknowledging that ordinarily for small-sized commercial retail property, such as in this case, the market sales approach valuation is given a higher weight than the income capitalization estimate, here the income value estimate is given the higher weight of 70%, since the subject is a franchise facility. In this manner, he concluded that the value of the subject property is $308,000, rounded unnecessarily upward to $310,000, or $186.19 per square foot.
The Town's appraiser also excluded the cost approach in his valuations. In his market sales approach he compared four recent sales. The first sale was a former Cumberland Farms dairy convenience store at 126 Burnside Avenue, East Hartford, on July 9, 1998, for $150,000, or $64.66 per square foot of building area. The property consisted of 0.25 acre of land with a onestory building having 2,320 square feet in a B-2 Business zone. The second sale was a fast food pizza restaurant, Queen Pizza, at 310 Silver Lane, East Hartford, on July 15, 1997, for $135,000, or $75 per square foot of building area. The property consisted of 0.27 acre of land with a onestory building having 1,800 square feet in a B-2 Business zone. The third sale was a former Mr. Steak restaurant at 677 Silver Lane, East Hartford, on December 18, 1997, for $225,000, or $70.01 per square foot of building area. The property consisted of 0.69 acre of land with a onestory building having 3,214 square feet in a B-1 Business zone. The fourth and final sale was a former pharmacy at 575 Main Street, Manchester, on May 6, 1998, for $120,000, or $56.44 per square foot of building area, The property consisted of 0.14 acre of land with a one-story building having 2,126 square feet in a B-3 Business zone.
With adjustments he considered appropriate to these comparable sales, the indicated value of the subject property ranged from $53.62 in the fourth sale to $80.51 to $90 per square foot for the other three sales. From these., he considered $85 per square foot of building area to be appropriate for the subject property of 1,620 square feet, excluding the 45 square feet entranceway. His estimate of value by the market approach, therefore, was $137,700, which he rounded to $140,000. CT Page 14445
Preliminary to his income approach to valuation, he concluded that the lease in effect at the subject property was a "pocket to pocket" lease in which the rent is paid from the operator to the owner, who are one and the same. In this, he was mistaken. To estimate the market rent that the subject is capable of generating, seven area rents were considered. These ranged from $6.60 to $14.42 per square foot. From these rents, he deemed it reasonable to anticipate a fair market rent of $12 per square foot. For 1,620 square feet of building area, this would translate to an annual gross potential rent of $19,440, or a monthly rent of $1,620. Allowing 10% for vacancy loss and collection costs, the effective gross income was $17,496. Management fees and reserve for repairs were each projected to be 5% of total gross revenue for a total of $1,750, leaving a net operating income of $15,746. Dividing the net operating income by an estimated capitalization rate of 10.75%, he calculated the value of the subject property by the income approach to be $146,474, which he rounded downward to $145,000, or $89.51 per square foot. In his reconciliation and final value conclusion, the Town's appraiser gave full weight to the sales comparison approach to value, with support by the income approach, and found the market value of the subject property as of the taking was $140,000.
The subject property was purchased by the owners approximately 18 years ago for $102,500. The town had undergone a statutory revaluation of all property as of the grand list of October 1, 1993. As a result of the townwide revision of assessments, the condemned property was appraised at the market value of $238,970, broken down as follows: land — $106,750; building — $126,220; and outbuilding — $6,000. Based on an assessment ratio of 70%, the total assessment was $167,270. No modification, demolition or improvement affecting the subject property and its valuation or assessment was made prior to the adoption of the redevelopment plan by the Town Council in 1996 and its subsequent taking.
"[T]he general rule is that assessed valuations made without the participation of the owner, as is the case in Connecticut; General Statutes § 12-64; are not usually admissible on the issue of the value of property taken by eminent domain," Connecticut Printers, Inc.v. Redevelopment Agency, 159 Conn. 407, 415; Sorenson Transportation Co.v. State, 3 Conn. App. 329, 332. While this assessment is not evidence of valuation of the subject property, it does cast a shadow on the two appraisals furnished to the court in the direction of the owners' appraisal.
"Under our law, a [judge trial] referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes CT Page 14446 and the decisions of [the Supreme Court] with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises." (Internal quotation marks omitted.) Minicucciv. Commissioner of Transportation, supra, 211 Conn. 382, 388 (1989);Birnbaum v. Ives, 163 Conn. 12, 21-22, 301 A.2d 262 (1972); Feigenbaumv. Waterbury, 20 Conn. App. 148, 153, 565 A.2d 5 (1989). It is his task to reach a result that gives the plaintiffs, "as nearly as possible, a fair equivalent in money as just compensation for the [property] taken . . ." Mathis v. Redevelopment Agency, 165 Conn. 622, 623, 345 A.2d 33
(1973); Feigenbaum v. Waterbury, supra, 153-54. In the performance of this duty, based upon all the circumstances, due consideration of the evidence and the opinions of expert witnesses, general knowledge of the elements constituting value, and a viewing of the property, nearby office and commercial developments and surrounding areas, the court finds the value of the subject property to be $225,000.
Having found that the value of the subject property is $225,000, judgment may enter for Frank S. Gencarelli, Trustee, and Joseph J. Algiere in the amount of $225,000, less $150,000 previously paid, or an excess of $75,000, with interest at the rate of 8% per annum on such excess from the date of taking on January 18, 2000, to the date of payment, together with costs and a reasonable appraisal fee of $950.
William C. Bieluch Judge Trial Referee